UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Gerald Ahola,
    Claimant

    v.                                    Case No. 16-cv-377-SM
                                          Opinion No. 2017 DNH 100
Nancy A. Berryhill, Acting Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Gerald Ahola, moves to reverse or vacate the Acting Commissioner's decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act, and Supplemental Security Income Benefits under Title XVI. See 42 U.S.C. §§ 423, 1381-1383c (collectively, the "Act"). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.  Procedural History.

In March of 2014, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he was disabled and had been unable to work since July 28, 2008.  Claimant's date last insured was September 30, 2012.  At the time of his alleged onset of disability, claimant was 38 years old.  His applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In April of 2015, claimant, his attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo.  Six weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.  Claimant then sought review by the Appeals Council, which denied his request for review.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Acting Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 8). In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 10). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I. "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health &

Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, it is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places the initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that

4

burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience. See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm the ALJ's decision.

## Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: July 28, 2008. Admin. Rec. at 14. Next, he concluded that claimant suffers from the following severe impairment: congestive heart failure. Id. But, the ALJ determined that claimant's impairment did not meet or medically equal one of the impairments listed in Part 404,

Subpart P, Appendix 1.  Id.  Claimant does not challenge those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of sedentary work, subject to the following limitations: "he can frequently and occasionally lift and/or carry up to 10 pounds, and can push and/or pull up to 10 pounds.  He can occasionally climb ramps, stairs, ladders, ropes and scaffolds, and can occasionally balance, stoop, kneel, crouch and crawl."  Id. at 15.  In light of those restrictions, the ALJ concluded that claimant was not capable of performing any past relevant work.  Id. at 22.  See also Id. at 50 (vocational expert's testimony about claimant's work history, which was performed at the "medium" exertional level).

At the final step of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform.  Relying upon the testimony of the vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Id. at 23.  Consequently, the

ALJ concluded that claimant was not "disabled," as that term is defined in the Act, from July 28, 2008, through the date of his decision.

## Discussion

Claimant challenges the ALJ's decision on two grounds, asserting that he erred by: (1) improperly evaluating the medical evidence in assessing claimant's residual functional capacity; and (2) failing to properly account for claimant's subjective complaints of fatigue.

I. <u>Claimant's Residual Functional Capacity</u>.

Claimant's primary severe impairment is "a history of cardiomyopathy, secondary to heavy recreational drug use," which included heroin and marijuana. <u>See</u> Admin. Rec. at 826. <u>See also</u> Joint Statement of Facts (document no. 11) at 3; Admin. Rec. at 624, 627, 632. In 2004, he received an implantable cardioverter defibrillator (an "ICD"), to address "severe left ventricular dysfunction." <u>Id</u>. But, from 2008 through the present, he has had sustained periods during which he has failed to take prescribed medications and either cancelled or failed to show up for medical appointments. <u>See, e.g.</u>, <u>Id</u>. at 2-3; Admin. Rec. at 255, 260, 263, 267, 270, 289, 291, 619.

In 2014, claimant received a new ICD unit, along with a new atrial lead. Upon discharge, claimant was told that "he can resume usual activity as long as he does not overdo it." Admin. Rec. at 257. According to claimant, that activity included "work around the house and work on cars." At that time he also reported that, "normally, he can split wood and carry about his activities without difficulty." Id. at 289, 585. Claimant also reported that he was "fairly active" but "fatigued at times" in caring for his children, one of whom was very young at the time. Id. at 559. In April of 2014, it was reported that, "Gerald looks good overall and he is feeling improved. He does have mild DOE[1] however he is amazingly able to do most activities without significant problems." Id. at 561 (Notes of Mary Macklin, APRN).

In June of 2014, state Disability Determination Services physician Jonathan Jaffe, M.D., reviewed claimant's medical records and concluded that claimant could perform sedentary work, and had the ability to stand and/or walk for up to two hours each day, and could sit for a total of about six hours in a traditional eight-hour workday. Admin. Rec. at 62. But, says claimant, Dr. Jaffe did not have access to his complete medical

---

[1] "DOE" is dyspnea (shortness of breath) on exertion.

records and, therefore, the ALJ erred in relying upon Dr. Jaffe's opinions.

It is not entirely clear precisely which records Dr. Jaffe reviewed and whether he had access to claimant's complete medical record. See Admin. Rec. at 69 and 79. Claimant asserts that although many of his medical records actually pre-date Dr. Jaffe's review, a substantial number of them appear to have been printed (i.e., reproduced by his treating sources) after that review. But, even if that is the case, the ALJ's opinion makes plain that the ALJ certainly had access to, and considered, all of claimant's medical history and treatment notes. And, neither Dr. Jaffe's opinion nor the ALJ's conclusion that claimant retains the residual functional capacity to perform a range of sedentary work is inconsistent with claimant's complete medical history. As this court has previously observed:

> [T]he fact that [a non-examining state agency physician] did not review later medical records does not necessarily preclude the ALJ from relying on his RFC assessment. "It can indeed be reversible error for an administrative law judge to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record." Strout v. Astrue, Civil No. 08-181-B-W, 2009 WL 214576, at *8 (D.Me. Jan. 28, 2009) (citing Rose v. Shalala, 34 F.3d 13, 18 (1st Cir.1994)). However, an ALJ may rely on such an opinion where the medical evidence post-dating the reviewer's assessment does not establish any greater limitations, see id. at *8-

10

> 9, or where the medical reports of claimant's treating
> providers are arguably consistent with, or at least
> not "clearly inconsistent" with, the reviewer's
> assessment.

Ferland v. Astrue, 2011 DNH 169, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011). See also Barup v. U.S. Soc. Sec. Admin., 2017 DNH 63, 2017 WL 1194644, at *7 (D.N.H. Mar. 31, 2017).

Here, Dr. Jaffe's opinions are not inconsistent with claimant's subsequent medical records. For example, in a report generated in March of 2014, Nurse Macklin noted that claimant had been "working full time" (presumably at the medium exertional level), and she advised him he could "resume usual activity as long as he does not overdo it." Admin. Rec. at 257.[2] Given his shortness of breath, however, she did advise that, "if possible," he should scale back his work to part-time. Id. Two months later, Nurse Macklin reported that, "Gerald is doing well overall despite his low ejection fraction. His ICD is interrogated with a report done in Paceart. There have been no issues with his device. The cardiac compass report shows that

---

[2] Although the record is not entirely clear, it appears that when claimant reported that he had been working full time, he was referencing work he was performing painting cars. See Admin. Rec. at 268 and 289. The vocational expert testified that such work was performed at the "medium" exertional level. Admin. Rec. at 50.

11

he is quite active every day." Id. at 677. Such evidence certainly supports the ALJ's determination that, at a minimum, claimant was capable of performing a range of sedentary work. Viewed slightly differently, Nurse Macklin's suggestion that claimant scale back his work at the medium exertional level from full-time to part-time does not compel the conclusion that he was incapable of performing sedentary work on a full-time basis. See generally Williams-Overstreet v. Astrue, 364 F. App'x 271, 276–77 (7th Cir. 2010); Madrid v. Astrue, 243 F. App'x 387, 392 (10th Cir. 2007); Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996).

Moreover, in a report generated a year later and signed by both Nurse Macklin and Charles Wicks, M.D., those treating sources opined that claimant's fatigue and/or dyspnea caused only a "moderate limitation of physical activity," he was "capable of low stress jobs," he could walk without rest or severe pain for a distance of one to three city blocks, "sitting [posed] no problem," and he could stand and/or walk intermittently for one to two hours. Admin. Rec. at 829.[3] Those

---

[3] The ALJ adequately explained the basis for his decision to discount portions of that report relating to claimant's ability to sit, as well as his need to avoid pulmonary irritants. See Admin. Rec. at 21.

opinions from claimant's treating sources, and information about his daily activity level gleaned from his ICD, are entirely consistent with the opinions of Dr. Jaffe. And, more importantly, they are entirely consistent with the ALJ's RFC determination.[4]

Viewing the record as a whole, the court cannot conclude that the ALJ erred in determining that, despite his exertional and non-exertional limitations, claimant retains the residual functional capacity to perform a range of sedentary work.

II.  Claimant's Fatigue and Shortness of Breath.

Next, the claimant asserts that, in reaching the conclusion that he is not disabled, the ALJ failed to properly account for his fatigue. The court disagrees. The ALJ acknowledged (and discussed) claimant's fatigue repeatedly in his order. See

---

[4]    There are, to be sure, letters in claimant's medical records from Donald Chan, M.D., and Mary Macklin, APRN, opining that, in 2009-2010, claimant was "unable to return to work." See Admin. Rec. at 615-17. But, those statements are unaccompanied by any discussion of claimant's symptoms that would support such a conclusion. And, determining whether claimant is disabled is an issue reserved to the Commissioner. See 20 C.F.R. § 404.1527(d)(1) (The Commissioner is "responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.").

13

Admin. Rec. at 16 (acknowledging claimant's assertion that he feels fatigued when walking up stairs); 20 (noting that claimant reported that he is tired on Sundays, but able to function normally the rest of the week).

Moreover, there is more than adequate medical evidence in the record to support the ALJ's conclusion that, despite claimant's asserted fatigue, he remains capable of performing a range of sedentary work. See, e.g., Admin. Rec. at 255 (reporting that claimant had been doing well until he stopped taking his medications, at which point he developed fatigue and dyspnea (shortness of breath); 257 (noting that, despite complaints of fatigue, claimant could "resume usual activity" which at the time included full-time work - though he was advised to "go back part-time if possible"); 309 (Emergency/Walk-in Care Report of February, 2010, at which claimant denied any fatigue); 497 (June of 2008 follow-up visit at Concord Hospital during which claimant denied any fatigue); 552 (May of 2014 Concord Hospital visit at which claimant denied any fatigue); 559 (noting that claimant has four children - one of whom was only 1 year old at the time - and despite feeling fatigued at times, claimant remains fairly active). Indeed, when asked whether claimant suffered from a marked limitation of

physical activity as a result of fatigue, Nurse Maklin and Dr. Wicks responded "no," and opined that claimant had only a "moderate limitation of physical activity." Id. at 828.

## Conclusion

Judicial review of the ALJ's decision is both limited and deferential. This court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act. Consequently, the issue before the court is not whether it believes claimant is disabled. Rather, the permissible inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. Such is the nature of judicial review of disability benefit determinations. See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial

evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Acting Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of the ALJ's decision (June 5, 2015). The ALJ's determination of claimant's residual functional capacity, his reliance upon the medical opinions of Dr. Jaffe, and his decision to discount certain aspects of the opinions given by Nurse Macklin and Dr. Wicks, are well-reasoned and adequately supported by substantial documentary evidence. So, too, is the ALJ's conclusion that claimant is capable of performing a range of sedentary work despite his asserted disabling fatigue.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 8) is

denied, and the Acting Commissioner's motion to affirm her decision (document no. 10) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 1, 2017

cc: Laurie S. Young, Esq.
    T. David Plourde, Esq.